UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00004-GNS

JACOB MORRISON; and
RENEE POLSTON                                                                            PLAINTIFFS

v.

CHRIS TRULOCK, et al.                                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 19). This matter is now ripe for adjudication. For the reasons that follow, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.       BACKGROUND**

**A.       Statement of Facts**

This matter arises from a series of encounters between Plaintiffs Jacob Morrison ("Morrison") and Renee Polston ("Polston") (collectively, the "Plaintiffs") and law enforcement officials in Horse Cave, Kentucky, in early 2018. (Notice Removal Ex. 1, ¶¶ 14-48, DN 1-1 [hereinafter Compl.]). Plaintiffs allege that on January 8, 2018, Defendants Chris Trulock ("Officer Trulock"), Larry Dale Martin II ("Officer Martin"), and Sean Henry ("Chief Officer Henry"), all police officers with the Horse Cave Police Department (collectively, the "Officers"), entered a residence located at the Greenwood Apartments. (Compl. ¶ 14). Following a testy exchange between Morrison and the Officers in which Morrison was threatened with arrest, he cursed at the Officers. (Compl. ¶¶ 15-20). The Officers then arrested Morrison and charged him with disorderly conduct, menacing, and terroristic threatening, for which he was prosecuted in Hart

1

District Court in a case styled *Commonwealth v. Morrison*, Hart District Court, Criminal Action No. 18-F-00011. (Compl. ¶¶ 22-25).

Just over a month later on February 17, 2018, Morrison and Polston were walking in Horse Cave when Officer Trulock and an unidentified officer drove past in a police vehicle. (Compl. ¶¶ 26-27). Morrison called out to the officers as "crooked cops,"[1] which Officer Trulock appears to have heard because he stopped his vehicle and detained Plaintiffs on the side of the road for approximately one hour in order to administer a field sobriety test. (Compl. ¶¶ 28-35). Polston alleges that Officer Trulock "groped her and touched her in an offensive and sexual manner without her consent," before ultimately letting her go. (Compl. ¶ 36-37). Morrison, on the other hand, was arrested and charged with public intoxication, disorderly conduct, menacing, and contempt of court in a case styled *Commonwealth v. Morrison*, Hart District Court, Criminal Action No. 18-M-00050. (Compl. ¶ 37).

The public intoxication, disorderly conduct, and menacing charges were dismissed on the motion of the prosecutor just two days later on February 19, 2018. (Pls.' Resp. Defs.' Mot. Summ. J. Ex. A, at 1, DN 20-2). The first set of charges arising out of Criminal Action No. 18-F-00011 were dismissed in full on September 17, 2018, in exchange for Morrison "admitting probable cause for the charge(s) of all counts." (Defs.' Mot. Summ. J. Ex. A, at 1, DN 19-2). Similarly, the remaining charge for contempt of court, in Criminal Action No. 18-M-00050, was dismissed on September 17, 2018, again in exchange for Morrison "admitting probable cause for the charge(s) of Count 1"—i.e., the contempt count. (Defs.' Mot. Summ. J. Ex. B, at 1, DN 19-3). Morrison did not stipulate to probable cause on the other charges from February 17, which had already been

---

[1] It is unclear whether this insult was intended to be heard by the passing officers. Plaintiffs allege that Morrison merely *said* crooked cops, while the Officers contend that he *yelled* at them. (Compl. ¶ 28; Defs.' Reply Mot. Summ. J. 2, DN 24).

dismissed. Both stipulation-dismissal agreements state that dismissal was "due to pending federal investigation and 5th Amendment privilege by arresting officer in related case." (Defs.' Mot. Summ. J. Ex. A, at 1; Defs.' Mot. Summ. J. Ex. B, at 1).

### B.     Procedural History

On December 28, 2018, Plaintiffs initiated this 42 U.S.C. § 1983 lawsuit in Hart Circuit Court against Chris Trulock, Larry Dale Martin II, former Police Chief Sean Henry, Horse Cave Police Department, Mayor Randall Curry, and the City of Horse Cave Kentucky (collectively, the "Defendants").[2] (Compl. 1). Plaintiffs alleged numerous violations of their rights under the U.S. Constitution and state law: (1) unlawful search, seizure, detention, and confinement; (2) violation of the right to free speech; (3) excessive force; (4) assault; (5) battery; (6) abuse of process; (7) malicious prosecution;[3] (8) false arrest/imprisonment; and (9) negligence. (Compl. ¶¶ 49-125). On January 17, 2019, the Defendants collectively removed the case to this Court on the basis of federal question jurisdiction. (Notice Removal 1, DN 1). On December 17, 2019, Police Chief Sean Henry and Officer Chris Trulock (collectively, the "Movants") moved for summary judgment on a variety of grounds. (Defs.' Mot. Summ. J., DN 19). Plaintiffs responded, and Movants replied. (Pls.' Resp. Defs.' Mot. Summ. J., DN 20; Defs.' Reply Mot. Summ. J., DN 24).[4]

---

[2] All individual Defendants were sued in both their individual and official capacities. (Compl. 1).
[3] Plaintiffs pleaded malicious prosecution claims as two separate counts, one as a Section 1983 claim and the other presumably as under state law. (Compl. ¶¶ 95-109).
[4] Plaintiffs' response argues at length that Defendants are not entitled to qualified immunity under state or federal law. (Pls.' Resp. Defs.' Mot. Summ. J. 17-19). This argument is inapposite, however, because the motion for summary judgment does not address Movants' qualified immunity.

## II.     JURISDICTION

The Court has subject matter jurisdiction over this action via federal question under 42 U.S.C. § 1983 and supplemental jurisdiction over the state law claims. *See* 28 U.S.C. §§ 1331, 1367(a).

## III.     STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment as a matter of law is appropriate when the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *Anderson*, 477 U.S. at 248.

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-

movant's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Movants contend that they are entitled to summary judgment on the following claims: (1) unlawful search, seizure, detention, and confinement, (2) malicious prosecution, (3) violation of the First Amendment, (4) false arrest, (5) violation of the Fifth Amendment, (6) violation of the Fourteenth Amendment (7) violation of the Eighth Amendment, and (8) the official capacity claims. (Defs.' Mem. Supp. Mot. Summ. J. 1, DN 19-1).[5] The Court will consider each of these arguments in turn.

### A. Unlawful Search, Seizure, Detention, and Confinement; Malicious Prosecution; First Amendment Right to Free Speech; and False Arrest

#### 1. *Plaintiff Morrison's Claims*

Movants contend that Morrison's claims premised on an unlawful search, seizure, detention, and confinement; malicious prosecution; violation of the right to free speech; and false arrest fail as a matter of law because Morrison stipulated that the Officers had probable cause to arrest him on the dates in question in exchange for dismissal of the criminal charges. (Defs.' Mem. Supp. Mot. Summ. J. 1, 3-4). Plaintiffs respond, first, that the probable cause stipulations are void

---

[5] Defendants also argue that Section 1983 is not a source of substantive rights such that Plaintiffs have failed to state a claim for relief. (Defs.' Mem. Supp. Mot. Summ. J. 5). This proposition on its face is, of course, correct. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979) ("[I]t remains true that one cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything."). Yet, that proposition has no bearing on the case at hand because Plaintiffs do not merely allege violations of Section 1983; rather, they have alleged numerous violations of specific constitutional rights operationalized via Section 1983.

as a matter of public policy and, second, that there cannot be probable cause to arrest someone for contempt because it is not a criminal offense.[6] (Pls.' Resp. Defs.' Mot. Summ. J. 1, 5).

The validity of the probable cause stipulation in the stipulation-dismissal agreements is the central question in this motion for summary judgment. If the Officers had probable cause to arrest Morrison on the two occasions in question, then several of his claims fail as a matter of law. To state a federal malicious prosecution claim, "a plaintiff must show, at a minimum, 'that there was no probable cause to justify [his] arrest and prosecution.'" *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003) (alterations in original) (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001)). Similarly, an essential element of a malicious prosecution claim under Kentucky common law is that the "defendant acted without probable cause . . . ." *Martin v. O'Daniel*, 507 S.W.3d 1, 11 (Ky. 2016), as corrected (Sept. 22, 2016). Regarding the First Amendment retaliation claim, a plaintiff must plead and prove that the officer defendant acted in retaliation without probable cause. *Barnes v. Wright*, 449 F.3d 709, 717-20 (6th Cir. 2006) (discussing *Hartman v. Moore*, 547 U.S. 250 (2006)). Furthermore, to state a claim for false arrest under the Fourth Amendment, a plaintiff must show at the very least that it was "unsupported by probable cause." *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (citing *Thacker*, 328 F.3d

---

[6] In *Devenpeck v. Alford*, 542 U.S. 146 (2004), the Supreme Court eliminated the requirement "that the offense establishing probable cause [] be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest . . . ." *Id*. at 153-54.

> Instead, an arrest is proper as long as the facts known to the officer at the time of arrest establish probable cause to believe that the individual was committing an offense. It is irrelevant whether the officer had probable cause to arrest for the specific offense that he identifies as the basis for the arrest at the time of the incident.

*Warren v. Lexington-Fayette Urban Cty. Gov't Police Dep't*, No. 5:16-140-DCR, 2017 WL 2888716, at *4 (E.D. Ky. July 6, 2017) (internal citation omitted) (citing *Devenpeck*, 543 U.S. at 153-54).

at 255). Similarly, a claim for false arrest or imprisonment under Kentucky law requires a showing that the arrest was made without probable cause. *Hartman v. Thompson*, No. 3:16-CV-00114-GNS-DW, 2018 WL 793440, at *12 (W.D. Ky. Feb. 7, 2018), *aff'd*, 931 F.3d 471 (6th Cir. 2019) (quoting *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007)). Related to false arrest and imprisonment, "detention without probable cause is an actionable Fourth Amendment injury under § 1983." *Gregory v. City of Louisville*, 444 F.3d 725, 749 (6th Cir. 2006) (citations omitted). Clearly then, the fate of these claims rests on the validity of the stipulation-dismissal agreements signed by Morrison.[7]

The parties appear to agree that the stipulation-dismissal agreements should be analyzed under the *Rumery-Coughlen* framework.[8] (Pls.' Resp. Defs.' Mot. Summ. J. 8-11; Defs.' Reply Mot. Summ. J. 6-10). In *Town of Newton v. Rumery*, 480 U.S. 386 (1987), the Supreme Court considered whether release-dismissal agreements—in which the criminal defendant waived rights to all subsequent related civil claims—were *per se* invalid as a matter of public policy. *Id*. at 392.

---

[7] In Plaintiffs' response, they concede that "all of Jacob Morrison's claims arise from his arrests on January 8, 2018, and February 17, 2018, and that the issue of probable cause for those arrests is dispositive of each of his claims." (Pls.' Resp. Defs.' Mot. Summ. J. 4). It does not appear, however, that the probable cause issue would be dispositive of many his other claims, namely for excessive force, assault, battery, and negligence. Movants do not argue that they are entitled to summary judgment on those claims, so they will not be dismissed.

[8] It is unclear whether the *Rumery-Coughlen* framework, which applies to release-dismissal agreements, even applies to the more limited stipulation-dismissal agreements at issue here. The Sixth Circuit has declined to answer this question. *See Grise v. Allen*, 714 F. App'x 489, 497 n.5 (6th Cir. 2017) ("Still another issue left off the table—and thus one we do not consider today—is whether the Sixth Circuit's rule in *Coughlen v. Coots*, 5 F.3d 970 (6th Cir. 1993), applies in this context [i.e., to stipulation-dismissal agreements]."); *compare Jenkins v. Louisville-Jefferson Cty. Metro Gov't*, No. 3:17-CV-151-DJH, 2018 WL 345119, at *5 (W.D. Ky. Jan. 9, 2018) (declining to extend the *Rumery-Coughlen* framework to stipulations of probable cause), *with Phat's Bar & Grill, LLC v. Louisville Jefferson Cty. Metro Gov't*, No. 3:10-CV-00491-JGH, 2013 WL 275542, at *4 (W.D. Ky. Jan. 24, 2013) (equating probable cause stipulations and release-dismissal agreements for *Rumery-Coughlen* purposes). The parties have not raised this issue and Movants have not objected to being subjected to the *Rumery-Coughlen* framework.

The Supreme Court decided against the creation of a hard-and-fast rule, ultimately concluding on the facts that the agreement in question was enforceable. *Id*. at 398. The Supreme Court thereby delegated the duty of determining the validity of such agreements to the district courts using a "case-by-case approach [to] appropriately balance[] the important interests on both sides of the question of the enforceability of these agreements . . . ." *Id*. at 399 (O'Connor, J., concurring in part and in the judgment).

Interpreting *Rumery*, the Sixth Circuit has held that a district court must make three determinations before enforcing a release-dismissal agreement: "(1) the agreement was voluntary; (2) there was no evidence of prosecutorial misconduct; and (3) enforcement of the agreement will not adversely affect relevant public interests." *Coughlen v. Coots*, 5 F.3d 970, 974 (6th Cir. 1993). "The burden of proving each of these points falls upon the party in the § 1983 action who seeks to invoke the agreement as a defense." *Id*.

Morrison concedes that he voluntarily entered into the relevant stipulation-dismissal agreements, thereby satisfying the first element. (Pls.' Resp. Defs.' Mot. Summ. J. 9). Voluntariness alone, however, in insufficient to justify enforcement of a release-dismissal agreement. *See Cady v. Cty. of Arenac*, No. 07-11369, 2008 WL 1766676, at *6 (E.D. Mich. Apr. 15, 2008), *aff'd*, 574 F.3d 334 (6th Cir. 2009) ("His voluntary conduct, however, does not dispose of whether the deferred prosecution agreement was enforceable under *Rumery*.").

The second element—the absence of prosecutorial misconduct—is somewhat impracticable to apply because it, in essence, asks Movants to prove the absence of something. The Sixth Circuit has provided some helpful guidance: "[S]hould a court conclude that a prosecutor secured a release-dismissal bargain in the face of substantial evidence of police misconduct, the court could take this as evidence of prosecutorial misconduct . . . ." *Coughlen*, 5

F.3d at 974. On this point, the present stipulation-dismissal agreements noted that the charges were dismissed because of a "pending federal investigation and 5th Amendment privilege by [the] arresting officer," presumably Officer Trulock. (Defs.' Mot. Summ. J. Ex. A, at 1; Defs.' Mot. Summ. J. Ex. B, at 1). Movants recognize the existence of a federal investigation but contend that "[a]llegations of wrongdoing are not evidence of wrongdoing . . . ." (Defs.' Reply Mot. Summ. J. 7). Movants are correct, of course, that an investigation is not on alone an indication of guilt. Regardless, without more information about the nature of the federal investigation and in the absence of testimony from the prosecutor about his or her knowledge of said investigation, it cannot be determined whether the prosecutor was aware of "substantial evidence of police misconduct." This fact weighs against Movants who have the burden both to show both that they are entitled to summary judgment and that the stipulation-dismissal agreements are valid.

Turning then to the third element—whether enforcement is adverse to the public interest—"*Rumery* suggested that this standard can be satisfied if the prosecutor demonstrates that obtaining the release was motivated by an independent, legitimate criminal justice objective." *Coughlen*, 5 F.3d at 975. This standard is not particularly burdensome:

> Examples of . . . legitimate criminal justice objectives that come to mind are situations where the cost of prosecution would outweigh the benefit accruing to the public from a conviction; where the strength of evidence of criminal conduct is doubtful even though charges were filed in good faith; where witnesses or evidence are no longer available; where evidence is subsequently discovered that points to the criminal case defendant's innocence; or where criminal charges are not the product of prosecutorial misconduct and both sides benefit substantially from a balanced settlement in the sense that both avoid exposure to potential liabilities and expenses.

*Id*.

While Movants have cited to this language, they have failed to proffer any legitimate criminal justice objective. That omission is most likely due to the fact that the motivation or

9

objective of the Hart County Attorney is unclear, and Movants are right not to speculate in the absence of evidence. On that point, Movants candidly acknowledge that "Defendants cannot know the exact intent of the Hart County Attorney in adding this language to the release-dismissal agreements and neither can the Plaintiffs." (Defs.' Reply Mot. Summ. J. 7). First, Movants cannot ignore that it is their burden to establish that the stipulation-dismissal agreements should be enforced. Second, Defendants *can* ascertain the intent of the prosecutor through deposition.[9] Without some evidence of the prosecutor's legitimate criminal justice objective, Movants are not entitled to summary judgment based upon the agreements. *See Campbell v. Rodriguez*, No. 13-CV-14953, 2015 WL 3604858, at *5 (E.D. Mich. June 8, 2015) ("Defendants have not presented any evidence—such as an affidavit or testimony from the assigned prosecutor—as to what factors the prosecutor was considering when he negotiated the plea deal that included the Release. There simply is no evidence in this record that in this particular case, enforcement of the Release would not adversely affect the public interest or that obtaining the Release was motivated by a legitimate criminal justice objective."). As the record stands, Movants have not met their burden establishing the absence of prosecutorial misconduct and the balance of public interests.

Next, Plaintiffs contend that even if the Court were to enforce the stipulation-dismissal agreements, the agreement in relation to Morrison's February arrest would have no effect. (Pls.' Resp. Defs.' Mot. Summ. J. 5-7). As noted, Morrison's February charges for public intoxication,

---

[9] Testimony from the prosecutor could also shed further light on whether he or she was aware of "substantial evidence" of police misconduct, thereby elucidating the second *Coughlen* element. It could similarly provide further information about the frequency of Hart County's use of these stipulation-dismissal agreements, which is another relevant but currently unclear fact. *See Hilfirty v. Shipman*, 91 F.3d 573, 584 (3d Cir. 1996) (noting that *Rumery* "prevents prosecutors from adopting a blanket policy of routinely obtaining in-court waivers or release-dismissal agreements every time they agree to dismiss the charges against one defendant in the course of agreeing to a compromise with a co-defendant . . . .").

10

disorderly conduct, and menacing were dismissed on the motion of the prosecutor without any agreement or stipulation. The final charge, contempt of court, was dismissed pursuant to the second stipulation-dismissal agreement. Plaintiffs argue, however, that Morrison was unable to stipulate to probable cause for such an arrest (even though he did) because contempt "is a judicial determination that can result in civil and criminal punishments, but it is not a crime enforceable by the police and it does not exist prior to the judicial determination of a violation." (Pls.' Resp. Defs.' Mot. Summ. J. 6). Rather than reply to this argument directly, Movants counter that there was still probable cause to arrest Morrison. (Defs.' Reply Mot. Summ. J. 3). Movants then proceed to elaborate on the facts surrounding Morrison's arrest. (Defs.' Reply Mot. Summ. J. 4). Whether the specific facts at issue gave rise to probable cause was not raised by Movants in their motion for summary judgment, however, and they cannot raise this argument for the first time in their reply and thereby deprive Plaintiffs of a chance to respond. *See Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) ("It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the non-moving party of its opportunity to address the new arguments.'" (citation omitted)). As such, the Court will not at this time determine if there was probable cause for the arrest independent of the stipulation-dismissal agreements.

  In sum, Movants have not demonstrated that the stipulation-dismissal agreements signed by Morrison should be enforced by this Court. As this was the only basis relied on by Movants to dismiss Morrison's claims for malicious prosecution, First Amendment retaliation, false arrest/imprisonment, detention without probable cause, and abuse of process, summary judgment on these claims is not warranted.

### 2. *Plaintiff Polston's Claims*

Movants maintain that Polston's First Amendment claim fails because she has not alleged that she engaged in protected speech or conduct upon which to base her retaliation claim. (Defs.' Mem. Supp. Mot. Summ. J. 10). Plaintiffs concede that Polston "did not engage in protected speech" and argue instead that she "nevertheless states a valid First Amendment claim for associational retaliation." (Pls.' Resp. Defs.' Mot. Summ. J. 16-17). It is certainly true that the First Amendment protects a "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) (citations omitted). Plaintiffs' problem, however, is that they never pleaded that Polston was targeted in retaliation for her association with Morrison. Plaintiffs' response provides for the first time that Polston was assaulted because of her "intimate relationship" with Morrison, but neither this allegation nor an explanation of the nature of Plaintiffs' relationship with one another was provided in the pleadings. Polston cannot now reframe her First Amendment retaliation claim as an associational claim when the Complaint fails to do so. *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 789 (6th Cir. 2005) (affirming a district court's grant of summary judgment on the grounds that plaintiff "had advanced new claims 'that were never plead,' and that there was 'nothing in [her] Complaint to put Defendants on notice' of her . . . claim."). Therefore, Movants are entitled to summary judgment on Polston's First Amendment claim.

Movants next contend that Polston's Section 1983 and state law malicious prosecution claims fail, simply, because she was never prosecuted for anything. (Defs.' Mem. Supp. Mot. Summ. J. 11-12). Movants similarly argue that Polston's abuse of process claim must fail because she has not pleaded that she was ever charged with a crime or otherwise engaged in any "process"

during which she could have been "abused."[10] (Defs.' Mem. Supp. Mot. Summ. J. 13). Plaintiffs did not respond to either of these arguments, so Movants motion for summary judgment on these claims is granted. *See Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008) ("[W]hen a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded." (citation omitted)).

Movants motion for summary judgment does not, however, address Polston's claims for assault and battery under state law. Movants candidly acknowledge that Polston's and Officer Trulock's differing accounts of the encounter on February 17, 2018, create genuine issues of material facts on those claims. (Defs.' Reply Mot. Summ. J. 12). Those claims survive.[11]

### B.     Fifth Amendment

Movants next argue that any of Plaintiffs' claims premised on violations of the Due Process Clause of the Fifth Amendment cannot stand because the Fifth Amendment only applies to actions of the federal government, and neither Movant is a federal official. (Defs.' Mem. Supp. Mot. Summ. J. 6). As the Sixth Circuit hade made clear, "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes *only the actions of the federal government*." *Scott v. Clay Cty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (emphasis added) (citations omitted). As such, Plaintiffs do not dispute that they cannot assert a claim under the Fifth Amendment. (Pls.'

---

[10] The Kentucky Supreme Court has clarified that an action for abuse of process "has two essential elements: 1) an ulterior purpose, and 2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Sprint Commc'ns Co., L.P. v. Leggett*, 307 S.W.3d 109, 114 (Ky. 2010) (citation omitted).
[11] Similarly, Movants have not addressed Polston's claims for unlawful search, seizure, detention, and confinement; excessive force; false arrest/imprisonment; and negligence.

Resp. Defs.' Mot. Summ. J. 19). Insofar as any of Plaintiffs' claims are premised on the Fifth Amendment, they are hereby dismissed.

### C. Fourteenth Amendment

Movants also contend that Plaintiffs' Section 1983 claims for violations of the Fourteenth Amendment fail as a matter of law because they are "subsumed by the claims couched under more specific provisions of the Constitution." (Defs.' Mem. Supp. Mot. Summ. J. 7). This argument appears to target Plaintiffs' Section 1983 claims for excessive force and for unlawful search, seizure, detention, and confinement. (Compl. ¶¶ 66-79). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal citations omitted) (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

First, regarding excessive force, the Sixth Circuit has provided the following helpful guidance:

> The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that "arise[ ] in the context of an arrest or investigatory stop of a free citizen," while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences. When neither the Fourth nor the Eighth Amendment serves to protect citizens, courts have applied the Fourteenth Amendment.

*Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) (internal citations omitted) (citation omitted). Plaintiffs' excessive force claims all appear to arise out of the two stops and arrests that took place in January and February 2018, respectively. Morrison was arrested on both occasions and Polston was merely stopped and temporarily detained on the second occasion. Morrison has not pleaded

that any excessive force was used against him after his arrest. Because Plaintiffs' excessive force claims arise in the context of the investigatory stops and arrests, the Fourth Amendment governs rather than the Fourteenth Amendment.

Next, regarding Plaintiffs' Section 1983 claims for unlawful search, seizure, detention, and confinement, any such claims must be premised on the Fourth Amendment, not the Fourteenth Amendment. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005) ("[R]eliance on the Due Process Clause is misplaced, however, because it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area [i.e., unlawful search and arrest].").

As such, insofar as Plaintiffs' excessive force and unlawful search, seizure, detention, and confinement claims are premised on the Fourteenth Amendment, Movants are entitled to summary judgment on those grounds. These Section 1983 claims are still maintained on Fourth Amendment grounds and are thereby not dismissed in their entirety.

D. **Eighth Amendment**

Movants maintain that Plaintiffs' Eighth Amendment claims fail because Eighth Amendment protections only apply to individuals convicted of a crime, and Plaintiffs were not convicted of a crime at any point relevant to the Complaint. (Defs.' Mem. Supp. Mot. Summ. J. 9). The Eighth Amendment to the U.S. Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court has made clear that Eighth Amendment protections only apply to those convicted of a crime. *See Ingraham v. Wright*, 430 U.S. 651, 667 (1977); *Krause v. Rhodes*, 570 F.2d 563, 572 (6th Cir. 1977). As with the Fifth Amendment claims, Plaintiffs do not dispute that they have failed to state a claim under the Eighth Amendment because neither of them

15

were convicted of a crime. (Pls.' Resp. Defs.' Mot. Summ. J. 19). Movants are entitled to summary judgment on any such claim.

### E. Official Capacity Claims

Movants finally argue that the official capacity claims against them are duplicative of the claims against their employer, Horse Cave Police Department, and should be dismissed. (Defs.' Mem. Supp. Mot. Summ. J. 15). Plaintiffs do not respond to this argument, ostensibly because Movants are correct. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978). As such, the official capacity claims against Movants are really against their employers, Horse Cave Police Department and the City of Horse Cave, both which are also named defendants in this action. The claims against Movants in their official capacities are therefore duplicative of the claims against the police department and the city. These claims are therefore dismissed. *See Owens v. Trulock*, No. 118-CV-00167, 2020 WL 376658, at *2 (W.D. Ky. Jan. 23, 2020) (citations omitted); *Thorpe ex rel. D.T. v. Breathitt Cty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013) (citing *Doe v. Claiborne Cty. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996)). In this Court's discretion, the same fate befalls the official capacity claims against Movants based on state law. *See Trulock*, 2020 WL 376658, at *3 (dismissing official capacity claims under state law as duplicative).

Plaintiffs may still, of course, pursue the Section 1983 claims against the entities and against Movants in their individual capacities.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (DN 19) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff Renee

Polston's claims for violation of her right to free speech under the First Amendment, for malicious prosecution, and for abuse of process are **DISMISSED**. To the extent that Plaintiffs rely on violations of the Fifth Amendment's Due Process Clause, the Fourteenth Amendment's Due Process Clause, and the Eighth Amendment's Cruel and Unusual Punishment Clause as bases for their Section 1983 claims, those claims are **DISMISSED**. All claims against Defendants Police Chief Sean Henry and Officer Chris Trulock in their official capacities are **DISMISSED**. All other claims remain.

Greg N. Stivers, Chief Judge<br>
United States District Court<br><br>
April 30, 2020

cc: counsel of record